MD

ORIGINAL

# UNITED STATES DISTRICT COURT

FILED

## SOUTHERN DISTRICT OF CALIFORNIA

2008 FEB 12 PM 1:47

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY [signature] DEPUTY

In the Matter of the Search of

Yahoo!, Inc.
701 First Avenue
Sunnyvale, California

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

**CASE NUMBER:** '08 MJ 0410

I, Carla J. Croft, being duly sworn depose and say:

I am a Special Agent of the Federal Bureau of Investigation and have reason to believe that on the property or premises known as:

See Attachment A

in the Northern District of California there is now concealed a certain person or property, namely:

See Attachment B

which is:

Evidence, fruits of crime, property designed for use or used in committing criminal offenses including violations of Title 18, United States Code, Sections 875(c) and 1513(b)(2). The facts to support a finding of Probable Cause are as follows:

See attached Affidavit of Carla J. Croft continued on the attached sheet and made a part hereof. X Yes ______ No

[signature]
CARLA J. CROFT
Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence
February 12, 2008 at San Diego, California:

[signature]
HONORABLE ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

Yahoo, Inc. is an Internet service provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 701 First Avenue, Sunnyvale, California.

# ATTACHMENT B

## I. Service of Warrant

The officer executing the warrant shall permit Yahoo, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

## II. Items subject to seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following Yahoo accounts and screen names:

1.) deathtosealwatch@yahoo.com

After receipt of the information and data from Yahoo, as provided above, the data will be analyzed to identify and secure communications, attachments and other information related to a threatening electronic mail communication sent from this account to info@aprl.org on January 12, 2008, identifying the persons involved, and reflecting potential violations of Title 18, United States Code, Sections 875(c) and 1513(b)(2).

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Carla J. Croft, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) having been so employed for approximately three and one half years. I have conducted and participated in a number of investigations involving violent crimes including assaults on federal officers, kidnaping, extortion, bank robbery and threatening communications. I previously investigated health care fraud, bank fraud, money laundering activities, drugs and civil rights violations. During the course of many of my investigations, I have encountered the use of Internet services and computer technology to commit federal offenses. I am presently assigned to the San Diego, California office of the FBI. In connection with this case, I have consulted with an FBI Special Agent assigned to our cybercrime squad in San Diego.

2. This affidavit is in support of a search warrant application for Yahoo! Inc., 701 First Avenue, Sunnyvale, California as described in Attachment A, for the Yahoo! email account described in Attachment B, paragraph II, for evidence of violations of 18 U.S.C. §§ 875(c) - Sending a Threatening Communication and 1513(b)(2) - Threat to Retaliate Against a Federal Witness.

3. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have set forth only the facts necessary to establish probable cause.

Statement of Facts

4. On September 22, 2007, a volunteer for the Animal Protection and Rescue League (APRL) observed and videotaped two scuba divers as

they approached a group of approximately fifty (50) harbor seals resting at Children's Pool Beach, in La Jolla, California. Harbor seals are protected by the federal Marine Mammal Protection Act. Under the Marine Mammal Protection Act, it is unlawful for any person or vessel or other conveyance to take any marine mammal in waters or on lands under the jurisdiction of the United States. The definition of "take" under the statue means harass, hunt, capture, or kill or attempt to harass, hunt, capture, or kill any marine mammal. The definition of "take" includes any negligent or intentional act which results in the disturbing or molesting a marine mammal.

5. The volunteer witnessed the two divers enter the water and create a disturbance in the group of harbor seals, causing at least eighteen animals to be disturbed and flush into the ocean. The witness provided the videotape of the incident, and the license plate number of the car in which the divers came to the beach, to federal agents charged with enforcing the Act. After reviewing the information, the divers were issued Violation Notices on December 31, 2007 and January 11, 2008, in which they were charged with misdemeanor violations of 16 U.S.C. 1372(a)(2)(A), the Marine Mammal Protection Act.

6. On January 12, 2008, the APRL received an electronic mail at its <u>info@aprl.org</u> account as follows (the name of the witness has been removed for purposes of this Affidavit):

> Two divers who used the Children's Pool in September have been cited by federal wildlife marshalls [sic] for disturbing the seals. [Witness] was apparently the one who turned them in.
>
> The problem now is that revenge will be taken out on [witness]. Many of the local divers have close friends in the California motorcycle clubs.

> As is this case, motorcycle club members have been contacted about [witness] and she will be dealt with very harshly, if not killed.
>
> They know that if she is not in San Diego, she may be found in San Francisco. Either San Diego or Oakland hit hogs will be involved in her punishment.
>
> She has brought this on herself.

7. The threat was sent to the APRL from the email account deathtosealwatch@yahoo.com. Routing information transmitted with the offensive email reflect that the message traveled through at least one computer located outside of the State of California. Yahoo, Inc., records obtained pursuant to subpoena reflect that the deathtosealwatch account was created on December 1, 2007, from a computer located at the Riford Public Library in La Jolla, California. The deathtosealwatch account has been accessed repeatedly but only from three locations: Riford Public Library; Scripps Institution of Oceanography Library ("SIO") in La Jolla, California; and, the Empress Hotel in La Jolla, California.

8. According to the witness, the two divers were accompanied by a third person who was not a diver. He is visible on the videotape. Witness knows him to be Kent Trego. Trego confronted the witness as she recorded the license plate of the divers. Each of the divers, when interviewed, said that Trego was one of the people they notified about receiving the notices of violation.

9. Trego has a personal electronic mail account: nautilusoceanic@yahoo.com. In an interview with me, Trego admitted that this account is his and is accessed only by him. Yahoo!, Inc., login records for Trego's nautilusoceanic account were obtained by

subpoena. On December 23, 2007, Trego's nautilusoceanic account was accessed at 3:44 p.m. from a computer at the Riford Library. Five minutes later, the deathtosealwatch account was accessed from a computer at Riford Library. On January 4, 2008, the nautilusoceanic account was accessed from Riford Library at 3:41 p.m. and the deathtosealwatch account was accessed from Riford Library at 3:47 p.m. Riford Library staff identified Trego as a regular visitor.

10. On the date of the threat, January 12, 2008, deathtosealwatch was accessed and the offensive message sent at 11:27 a.m. from Riford Library. Less than three minutes later, Trego's nautilusoceanic account was accessed from Riford Library. Between noon and 1:00 p.m., the nautilusoceanic and deathtosealwatch accounts were accessed alternatively three times each from the same terminal on the third floor of the Scripps Institution of Oceanography Library. The SIO Library is approximately five miles from the Riford Library. SIO Library staff also identified Trego as a regular visitor who uses their computers.

11. On the following day, January 13, 2008, at about 5:10 p.m., Trego's nautilusoceanic account was accessed from the Empress Hotel. About 15 minutes later, the deathtosealwatch account was accessed from the Empress Hotel. Empress Hotel staff were unable to identify Trego. The publicly-accessible Internet-connected computer at the Empress Hotel was perused by an FBI agent who found documents on the computer which reflected that Kent Trego was the author.

12. On January 14, 2008, at about 11:23 a.m., Trego's nautilusoceanic account was accessed from a terminal on the second floor of the SIO Library. Approximately 2 and one-half minutes later,

at about 11:26 a.m., the deathtosealwatch account was accessed from the same terminal.

13. From January 15 through January 28, 2008, the nautilusoceanic and deathtosealwatch were accessed back to back from the same locations, either Riford Library, SIO Library or the Empress Hotel seven times. On two occasions, there were but 40 seconds between logins.

14. Based upon the foregoing, there is probable cause to believe that the deathtosealwatch@yahoo.com account was used to transmit a threat in interstate commerce to retaliate against a federal witness and may contain communications relevant to that offense and to identify others who may have conspired with Kent Trego in committing the offenses described herein.

Yahoo! Inc.

15. Yahoo! Inc. is an Internet service company and as such, Yahoo! provides subscribers with access to many services and features. Yahoo! Inc. provides an electronic mail (email) service, which allows Yahoo! Inc. members to communicate with other Yahoo! Inc. members, and computer users who may have different electronic mail systems. Yahoo! Inc. members are able to access the Yahoo! Inc. servers through the use of a computer and computer modem or other connection device. Through this computer access, Yahoo! Inc. members are able to communicate to other subscribers of Yahoo! Inc. in real time, assuming the other user is online, or through electronic mail (e-mail) systems.

16. Through the use of e-mail and the Yahoo! Inc. Instant Messenger program, the Yahoo! Inc. member is able to send messages,

which can include an attached file, which may contain text messages, graphic image files or other file types. Those files are sent in a computer format. Both file types are capable of being stored on a user's computer or printed on paper and saved. These files may also be stored on other computer media such as zip drives, floppy disks and compact disks (CD). These files are also stored remotely by Yahoo! Inc.

17. Subscribers to Yahoo! Inc. use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Yahoo! Inc. does not verify the information provided in a screen name against the true identity of a member/subscriber.

18. An IP address is a unique address through which a computer connects to the Internet. Based on training and experience, I know that Yahoo! Inc. captures and records the Internet Protocol (IP) address of the user when a Yahoo! Inc. account is created.

SEARCH PROTOCOL

19. Based on my training and experience and consultation with other agents involved in Internet crimes, a voluminous amount of information can be stored in a computer account, and individuals involved in illicit activity on the Internet frequently store such information in a deceptive manner to conceal their criminal behavior. Therefore, the searching authorities must examine all the stored data to determine which files are evidence, and fruits or instrumentalities of the crime. This sorting process is far too time consuming and would be impractical to be done at the Yahoo! Inc. offices. Moreover, the sorting of information should be completed in a controlled

environment because of the vast array of computer hardware and software that might be necessary to analyze the data as well as maintain the integrity of the data recovered. Therefore, I request authority to seize all images, text messages and other content from deathtosealwatch@yahoo.com, as described in Attachment B. The United States Fish and Wildlife Service and the Federal Bureau of Investigation will review the records sought by the search warrant and will segregate any images and messages that are evidence, fruits or instrumentalities, or that may lead to further evidence of the offenses described herein.

CONCLUSION

20. In consideration of the foregoing, the affiant respectfully requests that this court issue a search warrant for Yahoo! Inc., as described in Attachment A for the evidence described in Attachment B.

CARLA J. CROFT
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me
this 12th day of February 2008:

HONORABLE ANTHONY J. BATTAGLIA
United States Magistrate Judge